IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CAROLYN SCOTT, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 19-00254-KD-MU |
| BP EXPLORATION & PRODUCTION, INC., *et al.*, | ) |
| Defendants. | ) |

**ORDER**

This action is before the Court on the Motion for Summary Judgment filed by Defendants BP Exploration & Production, Inc. and BP America Production Company (BP), brief and evidence in support (docs. 42, 43, 44). Plaintiff Carolyn Scott was ordered to file her response on or before February 24, 2021 (doc. 46). To date, no response has been filed. Upon consideration, and for the reasons set forth herein, summary judgment is granted in favor of BP.

I. Factual background[1]

Plaintiff Carolyn Scott filed a Back-End Litigation Option (BELO) lawsuit pursuant to the BELO provisions of the BP/Deepwater Horizon Medical Benefits Class Action Settlement Agreement (MSA) in MDL No. 2179 (doc. 1, p. 1). Scott alleges that as a result of exposure to oil and/or oil dispersants during the clean-up following the Deepwater Horizon oil spill, which occurred on April 20, 2010, she has been diagnosed with "a variety of conditions including, but not limited to chronic dry eye syndrome" (doc. 1, p. 14). Scott worked "very shortly after" the

---

[1] The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

oil spill (doc. 1, p. 15).  She "was working 12 hours days, 7 days a week" and her "primary duties involved digging and picking up tar balls on shore and placing them in garbage bags or buckets." (Id.).  Scott alleges that she was diagnosed with chronic dry eye syndrome on September 6, 2013 (Id.).  Because her alleged condition developed after April 16, 2012, it is a "Later-Manifested Physical Condition" (LMPC) (doc. 44-1, MSA § II.VV).  Scott selected the BELO process as her remedy for compensation (Id., MSA § IV.(C)). [2]

Scott's BELO complaint was initially filed in the Eastern District of Louisiana and later transferred to this Court on May 29, 2019 (docs. 6, 7).  That same day, this Court issued a BELO Case Management Order to govern all BELO actions post-transfer (doc. 8, modified September 9, 2019 (doc. 15). Relevant to this motion, the CMO provides that "Plaintiff shall disclose all expert witnesses to be called at trial in accordance with Fed. R. Civ. P. Rule 26 within 7 months (210 days) of the docketing date." (Id. at ¶ 9).  After an extension, Scott disclosed two experts, Lee Lemond and Dr. Patricia Williams[3] (doc. 40).  She did not disclose Dr. Gene Terrezza, an optometrist who examined her at the request of her attorney.

At deposition, Scott testified that Dr. Terrezza, an optometrist, examined her eyes on September 6, 2013 (doc. 44-2). She testified he said she had a "bad case of chronic eye" (*sic*) and

---

[2] The MSA provides a method for compensation and facilitation of medical care for class members affected by the oil spill and clean-up and offered class members who did not opt out two remedies for pursing medical claims (doc. 44-1, MSA). The first remedy provides for a compensation plan with fixed payments for Specified Physical Conditions (doc. 44-1, p. 45). The second remedy, for plaintiffs with LMPCs, was to "seek compensation under workers' compensation law or the Longshore and Harbor Workers' Compensation Act, as applicable" or file a BELO action (doc. 44-2, p. 61).

[3] The docket indicates that Lemond is an environmental scientist and consultant proffered to testify regarding the clean-up.  Dr. Williams' area of expertise is not identified.  However, Dr. Williams appears to be a toxicologist. *In re Deepwater Horizon Belo Cases*, No. 3:19CV963, 2020 WL 6689212, at *1 (N.D. Fla. Nov. 4, 2020).

"some kind of stuff in my eye", and her work for BP was the cause of her eye condition (Id., p. 4).  The appointment lasted about an hour and that Dr. Terrezza gave her "a piece of paper telling [her] what to do to [her] eyes, making sure [she] put drops in [her] eyes." (Id.).  She did not see him again. Scott testified that she has not been treated by any other ophthalmologist or optometrist since that day and she uses "Tears" eyedrops, which she buys at Wal-Mart (Id.).

At her deposition, Scott provided a copy of Dr. Terrezza's fill-in-the-blank/check-the-box form. He filled in a blank to indicate Scott had worked on the clean-up in July 2010, checked the box to indicate that "[d]uring the exam the patient was found to have … chronic dry eye syndrome due to chemical exposure" and wrote that "It is my belief that his illness began at the point of exposure" (Id., p. 5).

Dr. Terrezza was deposed May 5, 2020, in regard to BELO cases in the Northern District of Florida.  He testified that he screened claimants referred by attorneys but did not have a doctor-patient relationship with them. He developed and used the pre-printed form as a stream-lined method for evaluating claimants and providing information to the attorneys for further investigation (doc. 44-3) ("And I thought this [form] would screen it into cases that were worth looking at and cases that weren't."). The form offered as "yes" or "no" options, two eye conditions: "Chronic conjunctivitis due to chemical exposure" and "Chronic dry eye syndrome due to chemical exposure" (doc. 44-2, p. 5).  He testified that the "purpose" of the form "was to just identify those with no symptoms and identify those with symptoms and signs. And that's all the purpose of this was, yeah. Drawing conclusions as to the toxicological basis of those symptoms and all that, no.  That's above my pay grade. I agree." (doc. 44-3, p. 10).  Although not specifically testifying with regard to Scott, Dr. Terrezza testified that "signs and symptoms"

3

of tearing and irritation could apply to a "number of ocular conditions", and that "burning" and "dry eye" could be a symptom of "a number of different eye conditions" (doc. 44-3, p. 5, 6).

II. Standard of review

"Summary judgment is appropriate where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Williamson v. Brevard County, Fla., 928 F.3d 1296, 1304 (11th Cir. 2019) (citing Fed. R. Civ. P. 56(a)). "The movant bears the burden of presenting pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any that establish the absence of any genuine, material factual dispute." Id. (citing Procaps S.A. v. Patheon, Inc., 845 F.3d 1072, 1079 (11th Cir. 2016) (citations and quotations omitted)). The district courts are "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013) (citation omitted).

If the non-movant bears the burden of proof at trial on the dispositive issue, the movant may meet its burden by pointing out the insufficiency of the evidence with respect to an essential element of the non-movant's claims. Celotex v. Catrett, 477 U.S. 317, 325 (1986). The burden then shifts to the non-movant who must set out specific facts, supported by the evidence, to show that a genuine issue exists. Celotex, 477 U.S. at 324. Thus, if the non-movant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323.

However, "a non-movant's failure to respond to a defendant's motion for summary judgment is not fatal; rather, the court must determine if the facts in the record illustrate that the movant is entitled to summary judgment." Ogwo v. Miami Dade County School Board., 702

Fed. Appx. 809, 810 (11th Cir. 2017) (citing Dixie Stevedores, Inc. v. Marinic Maritime, Ltd., 778 F.2d 670, 673 (11th Cir. 1985)). "[W]hen the non-movant fails to properly address a party's factual assertions, the court may consider those facts undisputed and grant summary judgment if the facts in the record—including those considered undisputed—illustrate that the movant is entitled to judgment in its favor." Id. (citing Fed. R. Civ. P. 56(e)). Additionally, Local Rule 7.2(b) requires a party responding to a Rule 56 motion to specify the disputed facts, if any, and that failure to do so will be interpreted as an admission that there is no material factual dispute:

> ...the party or parties in opposition shall file a brief in opposition thereto, and, if it is contended that there are material factual disputes, shall point out the disputed facts appropriately referenced to the supporting document or documents filed in the action. Failure to do so will be considered an admission that no material factual dispute exists; provided, that nothing in this rule shall be construed to require the non-movant to respond in actions where the movant has not borne its burden of establishing that there is no dispute as to any material fact.

S.D. Ala. L.R. 7.2(b).[4]

In United States v. One Piece of Property, 5800 S.W. 4th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004), the Court of Appeals for the Eleventh Circuit explained that "[t]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." Additionally,

> ... the district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is

---

[4] Garnette v. Kroger Co., No. 1:19-CV-05859-WMR, 2020 WL 7329587, at *2 (N.D. Ga. Nov. 5, 2020) ("A court has the power to grant an unopposed motion for summary judgment pursuant to its local rules provided that the non-movant is put on notice that failing to respond to the motion could result in it being granted as unopposed. See Dunlap v. TransAmerica Occidental Life Ins. Co., 858 F.2d 629, 632 (11th Cir. 1988). The Eleventh Circuit has ruled that granting summary judgment in such a manner is appropriate "so long as the party against whom judgment will be entered is given sufficient advance notice and has been afforded an adequate opportunity to demonstrate why summary judgment should not be granted." Burton v. City of Belle Glade, 178 F.3d 1175, 1204 (11th Cir. 1999)").

supported by evidentiary materials ... At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment..... In addition, so that there can be an effective review of the case on appeal, the district court's order granting summary judgment must [ ] indicate that the merits of the motion were addressed....

Id. (citations omitted).

III. Statement of the law

The MSA provides that "[n]otwithstanding the law applicable to the underlying claims, which the PARTIES dispute, this MEDICAL SETTLEMENT AGREEMENT and the RELEASE hereunder shall be interpreted in accordance with General Maritime Law." (Doc. 44-1, p. 196). Scott accordingly pled admiralty and maritime jurisdiction when she filed her complaint (doc. 1).

The BELO remedy was a negotiated part of the MSA and the MSA sets out the "issues to be litigated", as follows:

> a) For purposes of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION, unless otherwise stipulated and agreed to in writing between a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER and a BACK-END LITIGATION OPTION DEFENDANT, the following issues, elements, and proofs of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION may be litigated at trial:
>
> (i) The fact of diagnosis (i.e., whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER was correctly diagnosed with the alleged LATER-MANIFESTED PHYSICAL CONDITION);
>
> ii. The amount and location of oil, other hydrocarbons and other substances released from the MC252 WELL and/or the Deepwater Horizon and its appurtenances, an/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITES and the timing thereof;
>
> iii. The level and duration of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, and other substances released

>from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof;
>
>iv. Whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S alleged LATER-MANIFESTED PHYSICAL CONDITION was legally caused by his or her exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the Deepwater Horizon and its appurtenances, and/or dispersants and/or decontaminants use in connection with the RESPONSE ACTIVITIES;
>
>v. Whether there exist any alternative case for the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S alleged LATER-MANIFESTED PHYSICAL CONDITION, including, but not limited to, exposure to other substances or sources of contaminants and/or toxins; and
>
>vi. The amount, if any, of compensatory damages to which the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is entitled.

(Doc. 44-1, p. 70-71, MSA § VIII(G)(3)(a)).

A Later Manifested Physical Condition, in relevant part, is defined by the Medical Benefits Settlement as:

>. . . a physical condition that is first diagnosed in a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER after April 16, 2012, and which is claimed to have resulted from such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, or other substance released form the MC252 WELL and/or the Deepwater Horizon and its appurtenances, and/or exposure to dispersants and/or decontaminants used in connection with the RESPONSE activities, . . .

(Doc. 44-1, p. 21-22).

IV. <u>Analysis</u>

BP argues that because Scott does not have any admissible evidence to establish the fact of a correct medical diagnosis, there is no genuine issue of material fact and BP is entitled to summary judgment in its favor. BP points out that Scott did not disclose any retained expert to opine as to her medical diagnosis and did not disclose Dr. Terrazza as a non-retained medical

7

expert. BP argues that Scott should be precluded from offering any expert evidence from Dr. Terrezza as to her diagnosis for failure to comply with Fed. R. Civ. P. 26(a)(2)(C).

BP also points out that Dr. Terrezza admitted that his pre-printed form was used to screen and identify claimants' signs and symptoms for further investigation by the claimants' attorneys, but not to provide a medical diagnosis; admitted that he did not have a treating relationship with Scott; and also admitted that certain signs and symptoms identified during the screenings could apply to other ocular conditions. BP argues that Dr. Terrezza's opinion, if proffered as an expert opinion as to Scott's diagnosis, does not meet the requirements of Fed. R. Evid. 702 because it is not a diagnosis, is unreliable and would not be helpful to the fact-finder and therefore, inadmissible.

To prevail on her BELO claim, Scott must prove that she has been "correctly diagnosed" with chronic dry eye syndrome. (Doc. 44-1, MSA § VIII(G)(3)(a)(i)); See Banegas v. BP Expl. & Prod., Inc., 2019 WL 424683, at *2 (E.D. La. Feb. 4, 2019) ("In toxic tort cases, a plaintiff must rely on expert testimony to prove his medical diagnosis and causation."); see also Lowery v. Sanofi-Aventis LLC, No. 7:18-CV-00376-RDP, 2021 WL 872620, at *7–8 (N.D. Ala. Mar. 9, 2021) ("A diagnosis and the causation of that diagnosis are essential to establish medical causation. And, when both are in dispute (like they are here), Plaintiff must have competent expert testimony establishing both.") (citing In re Am. Airlines Flight 331, 2013 WL 12340397, at *2 (S.D. Fla. Oct. 24, 2013); Compton v. Bach, 374 F. Supp. 3d 1296, 1304 (N.D. Ga. 2019); Banegas v. BP Expl. & Prod., Inc., 2019 WL 424683, at *2 (E.D. La. Feb. 4, 2019)).

In her complaint, Scott relies on a diagnosis made September 6, 2013. Although she did not identify Dr. Terrezza in her complaint, the undisputed evidence shows that he examined Scott on that date. However, Scott failed to disclose Dr. Terrazza as a non-retained expert

witness and failed to disclose any other expert witness whose testimony would establish a diagnosis of her alleged chronic dry eye syndrome.[5] *Cf.* Garcia v. BP Expl. & Prod. Inc., No. 4:19-CV-692, 2020 WL 4689214, at *1 (S.D. Tex. July 31, 2020) (Garcia "designated Dr. Rene Vela, a family doctor, and Dr. Allan Kapilivsky, a radiologist, as non-retained treating physicians to testify on 'Plaintiff's medical history, alleged injuries, causation, examinations, treatments, *associated diagnosis* and prognosis, and costs associated for treatment.'") (emphasis added); Collins v. BP Expl. & Prod. Inc., No. 4:19-CV-2198, 2020 WL 7658068, at *1 (S.D. Tex. Aug. 5, 2020) (Collins "designated Dr. Mark D'Andrea and Dr. Randall Stenoien, two doctors that performed BELO-related screenings for Plaintiff's law firm, as non-retained treating physicians to testify on 'Plaintiff's medical history, alleged injuries, causation, examinations, treatments, *associated diagnosis* and prognosis, and costs associated for treatment.'") (emphasis added).

When given the opportunity to respond to BP's arguments, Scott failed to do so. Thus, she did not offer any argument that her failure to disclose was substantially justified or harmless, such that the Court may excuse the failure and allow a witness. See Fed. R. Civ. P. 37(c)(1).

Moreover, as BP points out, Dr. Terrazza's check-the-box/fill-in-the-blank form and his testimony with regard to the purpose of the form, are not reliable and admissible expert opinion evidence which would meet the requirements of Fed. R. Evid. 702. See Escobar v. BP Expl. &

---

[5] According to Fed. R. Civ. P. 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). In determining whether the failure to disclose is substantially justified or harmless, the Court considers four factors: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." Torres v. First Transit, Inc., No. 17-CV-81162, 2018 WL 3729553, at *2 (S.D. Fla. Aug. 6, 2018). Since Scott did not respond to the motion for summary judgment, she made no showing on any of the factors.

Prod., Inc., No. CV 18-9170, 2019 WL 6877645, at *3 (E.D. La. Dec. 17, 2019) (finding that there was no competent evidence when the "only summary judgment evidence before the Court relating to Plaintiff's medical diagnosis, or an inference of causation, is a three-page Examination Report from Industrial Medicine Specialists").

Scott cannot prove an essential element of her BELO claim against BP, a correct diagnosis of her alleged condition. Accordingly, BP is entitled to summary judgment in its favor. See Piacun v. BP Expl. & Prod., Inc., No. CV 15-2963, 2016 WL 7187946, at *6 (E.D. La. Dec. 12, 2016) (granting summary judgment where, inter alia, "Plaintiff has not come forward with summary judgment evidence to raise a genuine issue of material fact as to whether he was diagnosed with *persistent* atrial fibrillation and, if so, when.") (italics in original).

V. Conclusion

For the reasons set forth herein, BP's unopposed motion for summary judgment is GRANTED.

Judgment shall be entered by separate document as provided in Fed. R. Civ. P. Rule 58(a).

DONE and ORDERED this 5th day of April 2021.

s/ Kristi K. DuBose
KRISTI K. DuBOSE
CHIEF UNITED STATES DISTRICT JUDGE